TECHNOLOGY v. ITC All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and the probable court. You're seated. Good morning, everyone. The first argued case this morning is No. 09-1549, NINESTAR TECHNOLOGY v. ITC. Mr. O'Connor. Thank you, Your Honor. May it please the court. Accompanying me is Mr. Stephen Lavin, who is co-counsel in this case. I know that you have questions. I would just ask the court's indulgence for me to make three quick, clarifying points, if I may. You can try. Okay. I'll talk fast. The first one is I want to make it clear that in terms of our argument that this is a criminal matter that needs to be decided in an Article III court, we're not just relying on the right to trial by jury. We're relying on the fact that if these are criminal penalties in a criminal proceeding, it can't be held by the administration. It has to be held in an Article III court. The second point is that the OSHA case that was relied upon by the government is an example of why this procedure in this, the ITC is different in terms of the constitutional requirements set forth in the United Mine Workers case, which is in the OSHA case and with OSHA generally, there's the opportunity to purge your behavior. You're told, you know, you'll be fined unless you comply. As opposed to in the ITC proceedings, there is no such opportunity. You're told this is what you did and here's the fine. Well, but is your client, are you saying that they could recall all of the items that the ITC says should not have been imported? No. But in terms of purging? That's right. There's no way to purge. And the third brief point is that I stated in my brief that the ITC gave no explanation as to how it reached the $55,000 a day. That's an overstatement. They did give an explanation. They recited the factors that were considered by the ALJ and they said they agreed with his findings on these issues. And then where they, where I believe they gave no explanation was they then pulled a figure of $55,000 a day with no explanation as to how they got that $55,000 a day. No quantification at all. And the rationale. Is the quantification required? I believe so. On what basis? Well, on the basis that you have to have a clarity and an understanding, as I said in the United Mine Workers, that due process requires criminal laws provide prior notice of the content and the sanction to be imposed. And in this case, there's no way of knowing what the sanction was going to be, which was going to be imposed until after the proceedings were over. And the only explanation they gave was, well, this fits our mandate of essentially teaching people to fear our decrees or respect them. Have they no discretion, though? Don't they have some discretion to ascertain what the proper penalty should be? Yes, they have almost unbridled discretion within the limits, which in this case was anywhere from $0 to $20 million. I'm not saying they didn't follow the statute. They did. Our problem is with the statute. I see. So those were my three points. Let me have it. I'm all ready for it. If not, I'll continue. The essence of— One question. I assume that you're no longer pursuing your argument based on the Quantum decision. Correct. The view of our Fujifilm decision this year. Yes, that's correct. Or in May of last year. Yes. If I could just make one point, however. We're not relying on Quantum. We do think, with all due respect to the court, that the Jasphoter decision was a wrong decision. But you recognize that we're now bound by that in light of Fujifilm. Well, you are, but I requested en banc review at the beginning of this case and was told, forget it, you can ask the panel at the end of the case. So I'm asking for en banc review. I understand you have an issue. Okay. So, I've only got five minutes for initial argument, so I won't talk too long here. The crux of our complaint is not only— It's essentially that this is a criminal proceeding. I don't see, in light of the United Mine Workers case, any way to get around that. The fact that this is labeled a civil proceeding is irrelevant in the United Mine Workers. We all know that anyway. Labels don't control. I think that was one of the arguments presented by the government and by Epson. If you look at their briefs, I didn't see any arguments that they presented, and it will be interesting to hear what they have to say, that deals at all with this issue of why these aren't criminal penalties, other than that they were labeled civil penalties. And there's also— Do I understand that your theory as to why this is a criminal penalty is because of the amount? No. That's the point I tried to make earlier. The— In the United Mine Workers case, the court makes an express determination statement that it doesn't matter if the fine is $50. The determination of whether something is criminal or not is whether it can be expunged and or is it compensatory. If it's not compensatory and it can't be expunged, it's criminal. And I didn't see any mincing of words in that decision. I think it's just clear up and down. That's it. So that's why I was saying it's an Article III issue. If it's a criminal sanction, it has to be handled in an Article III court. In addition, because the amounts are so large, that if you're in a federal district court, you'd be entitled to a jury trial. So it is the amount. Well, the amount determines whether there's a jury trial. It doesn't determine whether it needs to be decided by an Article III court. What is your theory as to how the ITC can enforce its orders against violators? Other than the seizure, the exclusion orders, where they can physically seize them at the border. They can do that. Right now, they have the ability to impose penalties. Our view is that's improper and it should be stricken from the books and Congress should be sold to go back. All they can do is to seize the imports? Constitutionally, I would say so, yes. Yes. I mean, these cloning fines, Congress can rewrite this, as we pointed out in our brief. The SEC went after Goldman Sachs. They didn't do it in an SEC court. They did it in a federal district court in New York. Twenty years ago, I represented a client against the IRS. The IRS brought actions against him for substantial penalties in a federal district court. If you look at the Federal Trade Commission, in the case that they recited, the rubber aid case, it's stated right in there that the, this is from the syllabus, it says, disobedience of an order issued by the Federal Trade Commission under the Clayton Act is a condition to its enforcement by the courts upon application of the commission. Congress could rewrite this law and provide that if you're seeking penalties, that you can go into a federal district court, like every other agency does, and get your penalties there. And perhaps then actually seek criminal penalties rather than just monetary penalties. For instance, if they demonstrated to the satisfaction of the district court that the backdating of the import dates was deliberate. Sure. For instance, so that the penalties might be worse in the district court. That's right. Absolutely. But the difference is you have substantial protections in a district court that you don't have in front of the commission. For example, because these are in the nature of criminal sanctions, you'd have to prove your case beyond a reasonable doubt. You don't have that in front of this commission. This is just basically substantial evidence. So, You're really saying that the ITC can't enforce its judgment other than by hoping that its exclusion order is complied with. Correct. In fact, based on the way the statute is presently written. And so what I'm suggesting, and I'm asking, I know it's an uphill battle, but I'm suggesting that the statute should be stricken as unconstitutional. Congress can write a new statute and they can provide a provision in there, which allows the ITC to go to a federal district court like all the other agencies do. And that would be the answer. But in terms of the way it's written right now, the enforcement mechanism in our opinion is clearly unconstitutional. So the answer is no. Right now, if you follow, if you agree with me, then that provision is unconstitutional and there is no other enforcement mechanism. And there's clearly no ability to purge or to cure yourself of your past alleged misdeeds. But if they bring it in, in district court, if this statute were changed, that wouldn't matter. Because the ability to purge yourself doesn't matter. It's a criminal case. You have all the safeguards that are involved in a criminal proceeding. You have a right to a trial by jury in these cases, because the damages are in the, you know, way in the stratosphere, in this case, a maximum of 20 million, the settlement on 11, it's still highly, you know, it's still a huge fine. And I think meets the criteria for the requirement of a jury, but all those protections. Did you raise this before the commission? We did not raise the constitutionality of the statute. We did not. And the reason we didn't is because only an article three court can invalidate an act of Congress. And it was our view that the, the ITC simply would not have the authority to invalidate the statute that created this entire mechanism. But isn't that question one, which the commission could have addressed? I don't think so. At least they could have articulated a basis for why they felt that the penalty was proper. Yeah, sure. They could have done that, but it wouldn't change our basic argument, which is the authority vested in the commission by Congress is unconstitutional. Yeah. Okay. We're just about to start your rebuttal period. Thank you. Mr. Harrington. Good morning and may it please the court. I was rather surprised to hear the, the arguments that my opponent has just made. He did make them in his brief to this court, but it's the first time that he did make them. This, these are the two arguments having to do with the criminal penalty and trial by jury. We, in our responsive brief pointed out that he had waived these arguments. His reply brief didn't really challenge that.  I would have thought that much of what he was arguing had already been taken care of by this court in the San Juan case, because in San Juan, this, this court was faced with an argument that the commission cannot assess penalties, cannot assess civil penalties. Rather, the commission must go to a district court to have those penalties assessed. This court rejected that notion. This court pointed out that some agencies have the authority to assess their own penalties. Some don't. The ones that don't have to go to district court and it explicitly distinguished FTC practice, which my opponent has referred to from commission practice, that taken with the arguments, the responsive arguments in our brief, I think indicate that this court should not even consider these arguments. As we point out in our brief, among other things. Okay, let's get to the other arguments. Yes. Well, I'll be brief. There's no dispute that the accused cartridges are covered by at least one of the asserted enforcement claims. I think we've just touched on and I don't need to go any further with the admissible repair defense and the continued vitality of the 2001 jazz photo decision. There was some discussion about lack of notice in the order and whether the order was, shall we say, overbroad in simply saying, you know, we shall cease and desist from all imports that infringe. Yes. In essence. That, in fact, is a typical commission order. That's the kind of language we use in our exclusion orders and our cease and desist orders. And there's nothing wrong with that language. We've been using it for maybe 40, 50, maybe 100, almost 100 years. But district courts frown on injunctions that say, you know, you are hereby enjoined from violating the law. For over breadth and lack of notice. Generally, it will say in an infringement case, you're, you're, you cannot make use or sell model number so and so or anything colorably similar there too. Yes. Preliminary, well, excuse me, injunction law, in our view, does not apply to commission orders. Commission orders are statutory injunctions derive from equity. We draft the orders the way we do to avoid circumvention. I mean, it's our orders are meant to cover attempted circumvention of the type, you know, that we saw in this particular case. In fact, our orders would not have great deal of value or effect if they weren't drafted the way they work. But I appreciate the concerns that, that you've just expressed. And those concerns are addressed by the commission's policy of conducting full blown infringement proceedings when we conduct an enforcement proceeding. So it's, it's, it's not like a contempt proceeding. It's just like a infringement proceeding. Furthermore, the importer has the opportunity to obtain an advisory opinion from the commission. And if that advisory opinion is negative, then that individual will know that he'll be in some serious trouble if he proceeds with, with his proposed course of action. Is there any reason why the commission follows this as a general rule and would not have as a general rule, something more akin to what you would see in a district court, identifying the particular models in question. And then if, if it saw fit, maybe a further statement or any other models similar there to that infringe at least that way, if, if the question arose in the future of some importer that was trying to avoid the order and abide by the law might, avoid the necessity of having another full blown, blown infringement trial. Well, they could, they could avoid that to some degree by asking for an advisory proceeding. Although our advisory proceedings are, are pretty extensive. We do what we do to avoid circumvention. Now, the issue that you raise really is not this case. I think you mentioned, this is, this is not a design around case. I think the, the importers nine star understood rather clearly what we were attempting to cover by the order. They just decided to proceed anyway. They didn't seek legal counsel. They could have, their counsel would have advised them that they were going to be doing something, something unlawful and you know, that they would be, be in trouble. They could have asked for an advisory opinion. They failed to do so. In fact, in their reply brief, they say that one of the reasons why they didn't do so was that it wouldn't have come out so well. Well, this didn't come out so well either. So it's just one of the factors that we considered. I don't know if I've completely answered your question. That's fine. Thank you. Well, I think we, uh, considered, you know, the, the appropriate criteria. I think that's clear from the commission's decision and from our brief. Uh, I think, uh, I submit that we assess the, uh, penalty properly. Uh, I think it's very clear from the record that the nine star, uh, uh, respondents, uh, and the point in several liability is, uh, is perfectly, uh, appropriate in this case. Uh, the two U.S. entities are obviously the, uh, sales, uh, marketing arms of nine star China. Uh, I don't have any further to add if there are no further questions, I'll turn this over to Mr. Barza. Thank you. We'll hear from Mr. Barza. Thank you. Thank you. Thank you. Good morning. My name is Hal Barza. I represent Epson in this matter, and I was the trial counsel in this case. I will be brief. Uh, first of all, I agree with everything said by counsel for the RTC about the institutional issues. And I would like to point out that there was clear notice in this case about what was prohibited. The ALJ found in the commission also found that nine star understood  which products were prohibited. In fact, just so we're clear, the products that were the subject of the enforcement proceeding are either compatible products that had already been litigated in the underlying violation phase, or their Epson original products that have been refilled and which were also adjudicated in the original violation phase to establish domestic industry. So there was no surprise here that the products that were accused in the enforcement proceeding were infringing. It had already been determined in the underlying violation phase and counsel stipulated to that infringement. The only issue they were raising was a repair defense, but the lawn repair was clear and the facts were within their control. So this is not a case that raises an issue of lack of notice. It's just not an appropriate vehicle. We would submit to consider issues about the scope of the remedy. Further, I believe the San Juan case addressed most of the institutional issues that are being raised here. And I believe counsel for the government for the ITC just addressed them as well. Simply put this case is a paradigm case for the imposition of a significant penalty. The nine star respondents understood fully, fully what the rules were that they were to obey. And they not only disregarded them, but they went out of their way to circumvent them and to conceal that. First they engaged in these conditional sales of compatible products where they would take orders to be filled only after the remedial orders of the ITC became effective. And the idea was a customer could call up, get the goods later, pay for them later while there's a cease and desist order. In effect, it was a direct circumvention of that order. Then they began importing and selling remanufactured products, knowing they were being made from foreign empties, if you would, and therefore that they infringed. Then they switched the, when they ran out of the remanufactured ones, they started selling compatibles again in their place. And finally they filed false compliance statements with the internet, with the ITC stating that all of their remanufactured goods were made from US empties when that was not the case. So I believe that this is a very powerful record upon which to allow for the imposition of penalties. And I believe the commission acted very reasonably in assessing the penalty. The commission's opinion is lengthy. It's thoughtful. They considered all the factors they determined to reduce the penalty significantly from $100,000 to $55,000 a day. I believe that was well within their discretion. With that, I have no further statements. I don't know if you have any questions. Any more questions? Any questions? Thank you. Thank you. Mr. O'Connor, you have a few minutes. Thank you. Brief responses. First of all, with regard to the statements just made by Mr. Barza concerning the compatibles that were sold, you know, questionably, those I don't believe were part of the basis for the court's, for the commission's decision. This is really about the remanufactured cartridges. And there was testimony in the case, and I, well, I can't testify, but I've spent a lot of time in this industry. The sale of remanufactured cartridges is something which is routinely done in this industry. I have the Rapitotype v. Hewlett-Packard case here where the court established the right of a party to refill cartridges that had been purchased from the original manufacturer. And so . . . That's not the issue here. No, no. I'm saying it goes to the state of mind as to whether my clients understood that remanufactured cartridges were part of the exclusion order and the orders of the commission. There's nothing in the commission orders which deals with refilled cartridges or reman cartridges, and they were never litigated in the underlying violations proceedings. That was your burden, was it not, particularly faced with the Fuji case? Which was our burden, too. To establish that these cartridges had already been exhausted. They had already been exhausted in the United States. That's true. That would be our burden if we were involved in a patent infringement suit. We're not involved in a patent infringement suit here. This is a penalty violation suit where you look at the state of mind. That's what I was inquiring about. That is the issue. The only issue that you're raising, I understand, is that the penalty is so large that we should view it as a criminal penalty. That's one issue. The other issue, vis-a-vis the refillable cartridges, is they were never part of the underlying proceedings. So one would have to extrapolate that the underlying proceedings, which related to design around primarily, that that holding would extrapolate to a completely different kind of cartridge, which are the refill cartridges. I was asking if that was an issue on this appeal. Yes. Yes, it is. And it was an issue that we raised repeatedly in front of the commission. So it was the fact that the order did not get there. And the argument that the state made, I believe, in their papers, was it doesn't matter whether or not the order was directed to products that were in front of it. The order prohibits all infringement. And so if they infringe, that's enough. And that gives rise to this question about whether the order has to be more specific than that, or at least has to be interpreted more specifically than that, as the ITC itself has done in prior cases. Did you request a clarification of the ITC order? No, we did not. I did not handle the violations proceedings. And so when the time got to me, that was water under the dam. So it was already done. Plus, they could have gone in for an advisory opinion. But that's not a requirement to meet. The requirement is that the person asserting the violation has to establish that there was proper notice. And, you know, if my clients didn't believe that they were infringing because they were selling cartridges not under the original proceedings, they wouldn't have been required or necessarily would have thought in terms of coming in and asking for an advisory opinion. You can ask for an advisory opinion from a federal judge. That doesn't mean that the judge can impose criminal sanctions on you just because you didn't seek an advisory opinion. Is Mr. Harrington correct that the San Juan case really addressed your argument that this is a criminal penalty? In my opinion, no. And that's the first thing that I have here. The San Juan case was a case, and the court was very clear, involved statutory construction. And what they said was, and they're correct, the San Juan case is correct in this, is that the procedures outlined for the enforcement of an ITC penalty determination is once that determination is made, if you want to then go forward and collect it, you have to go to a district court, reduce it to a judgment, and then you can levy on property or do whatever you want to. That's the procedure that's outlined. And that was the only thing they dealt with because the respondents in that case were arguing that, well, that last procedure really should require a trial de novo. And the court said, no, there's nothing in that procedure that says anything about a trial de novo. In fact, it's basically ministerial. So, you know, you go in and your judgment is tied to the equivalent of full faith and credit. That has nothing to do with the issues here where we're challenging the constitutionality of the statute. Of the right to impose the penalty in the first instance. Correct. Exactly. Exactly. And in that regard, the counsel for the state indicated that the court noted the difference between the FCC and the ITC. And it's the same thing I've been talking about. The FCC or the Trade Commission, the Commerce Department, all of those are different in that there's no penalty imposed by the agency. Those are imposed by a court. And all we're saying is that's the reason for that is because of the constitutional requirements. And those requirements should be no less for the ITC than they are for any other agency. Okay. Thank you, Mr. O'Connor. Thank you very much, Honor. Thank you both. The case is taken under submission.